IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| BOBBY J. CHOPLIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:16CV1412 |
| | ) | |
| INTERNATIONAL BUSINESS MACHINES CORPORATION, | ) ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on Defendant's Motion for Judgment on the Pleadings [Doc. #13]. In this case, Plaintiff Bobby Choplin alleges that he was a sales representative for Defendant International Business Machines Corporation ("IBM") from 2012 until 2016 and that Defendant IBM improperly failed to pay him the commissions due on a deal he closed for Defendant worth over $6,649,000.00. Defendant removed this case from North Carolina state court based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a), and subsequently filed the present Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c). Plaintiff has filed a Response in opposition to the Motion, and Defendant has filed a Reply brief. The Motion is therefore ready for ruling. For the reasons set out below, the Court recommends that Defendant's Motion be granted as to Plaintiff's Fourth Claim for Relief alleging Unfair and Deceptive Trade Practices under N.C. Gen. Stat. § 75-1.1. However, as to the remaining claims, the Court concludes that the contentions require consideration of matters

outside the pleadings, and therefore should instead be considered on dispositive motions after discovery, which is set to close on October 16, 2017.

I. FACTS, CLAIMS, AND PROCEDURAL HISTORY

Plaintiff Bobby Choplin alleges that in July 2015 he closed a sales deal on behalf of Defendant IBM with BB&T Bank worth over $6,649,000.00. (Complaint [Doc. #5] ¶ 44.) He claims that his commission on this deal was over $800,000.00. (Id. ¶ 45.) Plaintiff further claims that he worked on this deal from January 2015 through July 2015, while traveling all over the state to "beat out significant competition" from other companies. (Id. ¶ 46.) Plaintiff says that he did this based upon "IBM's representations that his commission earnings would not be capped or limited in any way." (Id. ¶ 47.) He claims that he was the only IBM sales representative entitled to commissions for this entire sale. (Id. ¶ 48.)

Plaintiff further alleges that after the sale closed and his commissions for the sales period were calculated, Defendant IBM refused to pay him the commission he earned. According to Plaintiff, this was the first sales period for which Defendant IBM did not honor the formula for calculating his commissions. He says that Defendant IBM lowered the amount of commission he received by: (1) lowering the total amount of sales credit he received for the BB&T deal from $6,649,000.00 to $3,879,938.00; and (2) capping the commission payment it was willing to make to Plaintiff to $348,847.00. (Id. ¶ 53-56.) Plaintiff says that he disputed the commission calculation with Defendant but that Defendant refused to reconsider its decisions. He states that he has since learned that Defendant has a pattern and practice of misleading its sales

representatives to entice them to work extraordinarily hard to make sales and then refusing to pay commissions after the deal is closed. (Id. ¶ 64.)

In support of his contentions, Plaintiff relies upon alleged statements made by Defendant's representatives at sales meetings, as well as a statement allegedly made by Plaintiff's manager. Plaintiff alleges that in January 2013, Defendant IBM held a "Sales Kick-Off Meeting" in Atlanta, Georgia. (Id. ¶ 24.) Plaintiff alleges that during this conference, Mark Dorsey, Vice-President of Software Sales, spoke and gave "specific representations that each sales representative's earning potential was unlimited because IBM does not limit or cap commissions." (Id. ¶ 28.) According to Plaintiff, Mr. Dorsey also told sales representatives that they had "unlimited potential to earn commissions at IBM." (Id. ¶ 29.) Plaintiff also alleges that Defendant had a sales representative, Lori Sockowitz, give a presentation at this meeting about the sales representatives' ability to earn unlimited commissions. (Id. ¶ 33.)

Plaintiff also relies upon a February 2015 "InterConnect Conference & 2015 Sales Kick-Off Meeting" in Las Vegas, Nevada. Plaintiff claims that at this conference, Janet Butler, Vice President of WorldWide Sales, and Ronnie Rohr, sales representative, both gave presentations and said that "sales representatives have the ability to make as much money as they want to." (Id. ¶ 37.) Plaintiff says that Ms. Butler "presented Ms. Rohr as evidence of a sales representative who was able to make significant, unlimited commissions." (Id. ¶ 38.)

Plaintiff further alleges that during his job interviews, Bruce Kopkin and other managers of Defendant told him that he "could make as much money as he wanted to." (Id. ¶ 14.)

3

Plaintiff says that based upon all of these representations, he believed that his commissions would never be capped or limited by Defendant. (Id. ¶ 41.)

Finally, Plaintiff also alleges that his manager confirmed that Plaintiff should be credited with the entire revenue of $6,649,000.00 for the BB&T deal. (Id. ¶ 55.)

In light of these allegations, Plaintiff raises claims of: (1) violation of the North Carolina Wage and Hour Act for unpaid wages; (2) unjust enrichment; (3) fraud; (4) unfair and deceptive trade practices; and (5) negligent misrepresentation. Plaintiff also seeks punitive damages.

Defendant IBM opposes Plaintiff's claims based in large part on the language of its incentive plans, which it claims governed the payment of Plaintiff's commission. Defendant contends that these plans do not constitute an enforceable contract requiring Defendant to pay any specific amount of commissions. Defendant has attached to its Answer copies of what it contends are the two incentive plans applicable to the year 2015.

## II. DISCUSSION

### A. Standard

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed-but early enough not to delay trial-a party may move for judgment on the pleadings." The standard for granting judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is the same as for granting a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Burbach Broad. Co. v. Elkins Radio Corp., 278 F.3d 401, 405-06 (4th Cir. 2002). Under Rule 12(b)(6), a plaintiff fails to state a claim upon which relief may be granted when the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

In deciding a Rule 12(c) motion, the court assumes the facts alleged in the Complaint are true and draws all reasonable inferences in the non-moving party's favor. Mendenhall v. Hanesbrands, Inc., 856 F. Supp. 2d 717, 723 (M.D.N.C. 2012). Unlike on a Rule 12(b)(6) motion however, the court may consider the Answer as well as the Complaint, and the factual allegations in the Answer are taken as true to the extent they have not been denied or do not conflict with the Complaint. Id. at 724. However, "Defendant cannot rely on allegations of fact contained only in the Answer, including affirmative defenses, which contradict the Complaint because Plaintiff was not required to reply to Defendant's Answer, and all allegations in the Answer are deemed denied." Id. (internal quotations omitted).

With respect to documents attached to the Answer, Federal Rule of Civil Procedure 12(d) provides that:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d). Documents attached to the Answer are part of the pleadings for Rule 12(c) purposes and "may be considered without converting a motion for judgment on the pleadings into a motion for summary judgment, only if the documents are central to the Plaintiff's claim and the authenticity is not challenged." Mendenhall v. Hanesbrands, Inc., 856 F. Supp. 2d at 724.

In considering Defendant's present Motion for Judgment on the Pleadings, the Court will first consider Defendant's Motion with respect to Plaintiff's Fourth Claim for Relief alleging Unfair and Deceptive Trade Practices under N.C. Gen. Stat. § 75-1.1, since that claim can be addressed without consideration of any of the materials attached to the Answer. The Court will then consider Defendant's Motion with respect to Plaintiff's remaining claims.

B.  Plaintiff's Fourth Claim for Relief – Unfair and Deceptive Trade Practice

To state a claim for unfair and deceptive trade practice under North Carolina General Statute § 75-1.1, a plaintiff must allege: (1) that the defendant committed an unfair or deceptive act or practice; (2) in or affecting commerce; and (3) that the plaintiff was injured thereby. TSC Research, LLC v. Bayer Chem. Corp., 552 F. Supp. 2d 534, 546 (M.D.N.C. 2008). A "simple breach of contract, even if intentional, does not amount to a violation of the Act; a plaintiff must show substantial aggravating circumstances attending the breach to recover under the Act." Bartolomeo v. S.B. Thomas, Inc., 889 F.2d 530, 535 (4th Cir. 1989).

To satisfy the "in or affecting commerce" element of the statute, the plaintiff must allege more than an unfair or deceptive practice between an employee and his employer. North Carolina courts "hold consistently that absent conduct affecting commerce beyond the employment relationship, employer-employee disputes are not sufficiently 'in or affecting commerce' to satisfy the second element of a UDTPA claim." Irwin v. Fed'l Express Corp., No. 1:14CV557, 2016 WL 7053383, at *11 (M.D.N.C. Dec. 5, 2016) (citing cases). In this case, Plaintiff's claim concerns allegedly unfair and deceptive practices solely within his employment

relationship with Defendant IBM. He has therefore failed to state a claim for relief as to this count.

Plaintiff contends, however, that absent the allegedly unfair practices, Defendant's competitors may have seized opportunities like the IBM deal. Plaintiff also contends that because of the allegedly unfair practices, "competitors and consumers [were denied] the benefits of [his] alternative labors." (Response [Doc. #15] at 14.) However, the Supreme Court of North Carolina has found that such attenuated effects on commerce are not sufficient to satisfy the statute. In White v. Thompson, 691 S.E.2d 676, 680 (N.C. 2010), the plaintiffs argued that the defendant co-partner's unfair practices potentially led to reduced competition and higher prices in the market. The court found that such an argument "overlooks that the unfairness of [defendant's] conduct did not occur in his dealings with" another company. Id. Rather, his conduct occurred within the partnership. Id. Similarly, in this case, Plaintiff's arguments about possible effects on competitors and consumers overlooks that the unfairness he complains of occurred within his employment relationship with Defendant IBM. Here, as in White, "[t]he General Assembly simply did not intend for such conduct to fall within the Act's coverage." Id.

For these reasons, Defendant's Motion for Judgment on the Pleadings as to Plaintiff's Fourth Claim for Relief for Unfair or Deceptive Trade Practices should be granted, and this claim should be dismissed.

C. Plaintiff's First Claim for Relief – North Carolina Wage and Hour Act

With respect to Plaintiff's first claim for relief under the North Carolina Wage and Hour Act, Plaintiff alleges that his commission payment constitutes "wages" under the North Carolina Wage and Hour Act, N.C. Gen. Stat. § 95-25.1 – 95-25.25 (the "Act"), that he earned those wages, and that Defendant is refusing to pay his wages in violation of the Act. (Compl. at 8-9.) The Act "prevents employers from denying their employees earned wages." Irwin, 2016 WL 7053383, at *8. A "wage" is defined under the Act to include bonuses and commissions. N.C. Gen. Stat. § 95-25.2(16).

Defendant IBM argues that the Act requires an enforceable contract to pay specific wages and that the language of the incentive plans attached to its Answer shows that the incentive plans do not constitute an enforceable contract. Plaintiff argues however, that at this stage of the proceeding it is improper to consider the incentive plans because they are not described in the Complaint or relied upon by Plaintiff. Plaintiff further contends that any of Defendant's allegations about the incentive plans, including Defendant's contentions that the incentive plans control the distribution of commission payments, must be deemed denied given Plaintiff's allegations of oral representations controlling that distribution as well as Defendant's past history of paying the full amount of commissions. (Response [Doc. #15] at 5-8.)

Having considered the parties' contentions, the Court concludes that it would be improper at this stage of the case to credit Defendant's allegations about its incentive plans over the objections of Plaintiff. In Jadoff v. Gleason, 140 F.R.D. 330, 331-32 (M.D.N.C. 1991), the Court faced a similar situation. On a motion for judgment on the pleadings, the Court found

8

that it could not consider documents attached as exhibits to defendant's Answer to foreclose recovery on the plaintiffs' claims because their existence was deemed disputed. The Court found that "Defendant cannot rely on the acknowledgments to support his motion because their existence is deemed disputed. Although the existence of the acknowledgments is not disputed by Plaintiffs in their brief in response to Defendant's motion, and is essentially admitted, their existence is not admitted on the face of the complaint and cannot be considered on a motion for judgment on the pleadings." Id. at 332 (footnote omitted).[1]

In the present case, Defendant has not shown that Plaintiff has described, admitted the existence of, or even mentioned the incentive plan documents in the Complaint. Rather, Plaintiff states in his Complaint that "Defendant has no policy or practice that would allow for the forfeiture of any such commissions by Plaintiff." (Compl. ¶ 71.) In addition, Plaintiff contests the application of the incentive plan documents, and further contends that consideration of the "limited documents" attached to the Answer would "create[ ] substantial risk of misinterpretation without a more fully developed record." (Resp. Br. at 5-6.)[2] In this

---

[1] The court in Jadoff went on to find that it could convert the motion into a motion for partial summary judgment and consider the documents. However, no party has advocated for such conversion here, and Plaintiff specifically requests the opportunity to make a full presentation on the record after an opportunity for discovery. In this case, discovery closes in a few weeks, and the issues can be properly presented on dispositive motions after the close of discovery.

[2] The Court notes that in his Response Brief, Plaintiff contends that the documents provided by Defendant and the description of the documents in the Answer must be deemed denied and may not be considered for purposes of the Rule 12(c) Motion. (Resp. Br. at 5.) Plaintiff then states that, "The court must instead read the document to evidence what it incontestably shows once one assumes it is what it appears to be. At the very least, this task creates substantial risk of misinterpretation without a more fully developed record." (Resp. Br. at 5.) In its Reply Brief, Defendant reads a portion of this statement to mean that Plaintiff concedes that the documents attached to the Answer may be considered by the Court and that the Court should "read the document to evidence what it incontestably shows." (Reply Br. at 2.) However, based on the remainder of Plaintiff's sentence and the full discussion in the Response Brief, it appears that Plaintiff actually contends that consideration of the documents as evidence at this stage would require the Court to make various assumptions

9

case, as in Jadoff, consideration of Defendant's incentive plan documents on a Rule 12(c) Motion would run a substantial risk of violating Rule 12(d). See Mendenhall, 856 F. Supp. 2d at 724 (on a Rule 12(c) motion, defendant cannot rely on allegations of fact contained only in the answer which contradict the complaint); Blake v. Berman, 598 F. Supp. 1081, 1083 (D. Mass. 1984) (the place of plaintiff's present confinement did not appear on the face of the complaint, and therefore could not serve as basis for a judgment on the pleadings). Because the incentive plan documents form the basis for Defendant's argument against Plaintiff's Wage and Hour Act claim, this claim should not be dismissed at this stage of the proceeding. Therefore, Defendant's Motion for Judgment on the Pleadings as to this claim should be denied at this time.

      D.      Plaintiff's Second Claim for Relief – Unjust Enrichment

Plaintiff's second claim for relief is for unjust enrichment. Unjust enrichment is "a claim in quasi contract or a contract implied in law. . . . If there is a contract between the parties[,] the contract governs the claim and the law will not imply a contract." Rev O, Inc. v. Woo, 725 S.E.2d 45, 49 (N.C. Ct. App. 2012) (quoting Booe v. Shadrick, 369 S.E.2d 554, 556 (N.C. 1988).) To state a claim for unjust enrichment, Plaintiff must allege that he conferred a benefit on another, the other party consciously accepted the benefit, and the benefit was not conferred gratuitously. Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp., 351 F. Supp. 2d 436, 446 (M.D.N.C. 2005).

---

not set out in the Complaint, and would create a substantial risk of misinterpretation if Plaintiff is not given the opportunity to present other documents or evidence on a more fully developed record. Thus, in light of the fuller context set out in the Response Brief, the Court does not read the portion of the sentence cited by Defendant as a concession that the documents attached to the Answer were not contested and should be considered by the Court on the present Motion under Rule 12(c).

In this case, Plaintiff claims that he conferred a benefit upon Defendant IBM by selling its products and services, that he did not receive the commissions to which he was entitled as a result of the benefit conferred, that the benefit was neither officious nor gratuitous, and that it would be inequitable for Defendant IBM to retain the share of his commission that was not distributed to him. (Compl. ¶¶ 75-81.)

In its Motion for Judgment on the Pleadings, Defendant contends that Plaintiff cannot state a claim for unjust enrichment because he was receiving a base salary as Defendant's employee. Specifically, Defendant contends that where an employee is paid a base salary, the employee does not unjustly enrich his employer by performing the duties that he receives a salary to perform even if the employer withholds the employee's discretionary or unearned bonus or commission payments. See McCabe v. Abbott Labs., Inc., 47 F. Supp. 3d 339, 349 (E.D.N.C. 2014) ("Abbott was not unjustly enriched by McCabe performing the job she was paid a salary to perform" where McCabe worked to persuade physicians to prescribe Humira in exchange for a base salary and the possibility, at Abbott's discretion, of bonus compensation." (internal quotations omitted)); Dulaney v. Inmar, Inc., 725 S.E.2d 473, 2012 WL 1514746, at *4 (N.C. Ct. App. May 1, 2012) ("Plaintiff was paid a base salary separate from the incentive payments, and Defendant was not unjustly enriched by Plaintiff performing the job she was paid a salary to perform," where Plaintiff failed to qualify for incentive payments under the terms of the Plan).

However, consideration of Defendant's Motion as to this claim also requires consideration of the terms of the incentive plans attached to the Answer, as well as other disputed factual contentions. As noted above, consideration of the incentive plans, without

allowing Plaintiff an opportunity to present evidence and be heard on a more complete record, would raise a potential violation of Rule 12(d). Therefore, the Motion to Dismiss this claim should be denied at this time, without prejudice to further consideration on dispositive motions after discovery and a more complete presentation of the record.

  E. Plaintiff's Third Claim for Relief – Fraud

In his Third Claim for relief, Plaintiff asserts a claim for fraud. Plaintiff claims that Defendant IBM through its executives and leadership represented to him that his earning potential was unlimited and that his commissions would not be capped or limited in any way. He says that he relied on those representations in his sales duties, that Defendant knew its sales representatives would rely on these representations, and that Defendant IBM knew such statements were false when made because it intended to cap or limit Plaintiff's commissions. Plaintiff alleges that he was unaware of Defendant's intention to limit his commissions. He says that he was injured as a result because he pursued the BB&T contract when he could have pursued other sales contracts.

Defendant argues first that Plaintiff's fraud claim fails the particularity test of Federal Rule of Civil Procedure 9(b). Rule 9(b) requires a party "to state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This has been construed to mean that a plaintiff must allege the time, place, and contents of the false representations, in addition to identifying the person making the misrepresentation and what he obtained thereby. Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999). A court should not dismiss a claim under Rule 9(b) if the defendant has been made aware of the

particular circumstances that he will have to defend against at trial, and the plaintiff has substantial prediscovery evidence of those facts. Id.

Plaintiff has alleged specific facts to support his fraud claim. He has alleged the specific places and times that the allegedly fraudulent statements were made, and identified the speakers and what Defendant gained from the alleged misrepresentations. Defendant contends that Plaintiff has failed to state particular facts of a promise that he would receive full commissions on the BB&T deal. However, this is not a particularity problem. Plaintiff has particularly described the allegedly fraudulent statements. Whether those representations constitute fraud as to the BB&T deal is a different question. Defendant knows the particular circumstances it will have to defend against, and because Plaintiff witnessed the statements being made, he has substantial prediscovery evidence of those statements. Therefore, Plaintiff's fraud claim should not be dismissed under Rule 9(b).

Defendant next argues that Plaintiff's fraud claim fails because generally a mere promissory representation will not support an action for fraud. However, a "promissory misrepresentation may constitute actionable fraud when it is made with intent to deceive the promisee, and the promisor, at the time of making it, has no intent to comply." Johnson v. Phoenix Mut. Life Ins. Co., 266 S.E.2d 610, 616 (N.C. 1980). Plaintiff alleges that at the time Defendant's representatives made the allegedly fraudulent statements, Defendant had no intent to comply with them and intended to deceive Plaintiff and other sales representatives. (Compl. ¶¶ 88, 89.) In its Motion for Judgment on the Pleadings, Defendant contends that the language of the incentive plans attached to the Answer shows that IBM reserved discretion to review and

13

reduce commission payments, foreclosing Plaintiff's argument that IBM made false representations with an intent to deceive him. Defendant likewise contends that Plaintiff's reliance on any allegedly fraudulent statements was not reasonable in light of the plain terms of the incentive plans. However, as previously discussed above, Defendant may not rely upon the language of its incentive plans to attempt to defeat Plaintiff's fraud claim at this stage of the litigation. Therefore, Defendant has not shown that Plaintiff's fraud claim should be dismissed on a Motion under Rule 12(c).

      F.      Plaintiff's Fifth Claim for Relief – Negligent Misrepresentation

In Plaintiff's Fifth Claim, Plaintiff alleges that Defendant made negligent misrepresentations to the extent that Defendant represented that its sales representatives have unlimited earning potential without a cap on their commissions. "To survive a motion to dismiss, the party raising the negligent misrepresentation claim must sufficiently allege (1) that it justifiably relied, (2) to its detriment, (3) on information prepared without reasonable care, (4) by one who owed the relying party a duty of care." River's Edge Pharm., LLC v. Gorbec Pharm. Servs., Inc., No. 1:10CV991, 2012 WL 1439133 at *20 (M.D.N.C. Apr. 25, 2012).

Defendant contends that Plaintiff's Negligent Misrepresentation claim fails because Plaintiff cannot show that he justifiably relied on any alleged misrepresentation. "The reasonableness of a party's reliance is a question for the jury, unless the facts are so clear that they support only one conclusion." Comer v. Person Auto Sales, Inc., 368 F. Supp. 2d 478, 486 (M.D.N.C. 2005); Marcus Bros. Textiles, Inc. v. Price Waterhouse, LLP, 513 S.E.2d 320, 327 (N.C. 1999). Here, Plaintiff has alleged that during his job interviews he was told that he "could

make as much money as he wanted to." (Compl. ¶ 14.)  He also alleges that his sales position included "an unlimited sales commission structure."  (Id. ¶ 15.)  Plaintiff says that from when he was hired in 2012 up until the BB&T deal in 2015, his commissions were always consistent with the calculation from Defendant's commission spreadsheet and were not limited.  (Id. ¶¶ 50-52.)  Plaintiff also alleges that "Defendant has no policy or practice that would allow for the forfeiture of any such commissions by Plaintiff."  (Id. ¶ 71.)

Defendant nevertheless contends that the Complaint fails to allege that Plaintiff was denied the opportunity to investigate or learn the true facts by exercising reasonable diligence as to the representations.  Defendant specifically argues that "any reasonable inquiry would necessarily have involved Plaintiff referring directly to terms of the IPLs [incentive plans], which he accepted on February 15, 2015 and July 30, 2015, and which were readily available to him on IBM's intranet."  (Def. Mem. at 19.)  Defendant contends that the incentive plans clearly state that IBM reserved discretion to review and reduce commission payments, and that these disclaimers would preclude any justifiable reliance by Plaintiff on any alleged misrepresentations regarding his commissions on the BB&T deal.  However, as noted above, Defendant may not rely upon the language of its incentive plans to attempt to defeat Plaintiff's claim at this stage of the litigation, given that the incentive plans were not addressed or included in any way in the Complaint, and given that there appear to be further issues regarding the incentive plans which would need to be considered on a more complete record.

Finally, Defendant argues that Plaintiff cannot show that any justified reliance was to his detriment.  However, Plaintiff alleges that he relied on Defendant's alleged misrepresentation that

15

his commissions would not be limited to focus on large deals such as the BB&T deal, while not pursuing other potential sales contracts, and was thereby injured by losing those potential wages. (Compl. ¶ 91-92.) Plaintiff has therefore sufficiently alleged that he was injured as a result of Defendant's alleged misrepresentations.

Accordingly, Defendant's Motion for Judgment on the Pleadings as to Plaintiff's claim for negligent misrepresentation should be denied at this time.

G. Punitive Damages

Finally, Defendant argues that Plaintiff's request for punitive damages is derivative of his fraud claim, and that because his fraud claim should be dismissed, his claim for punitive damages should be dismissed. However, the Court recommends that the Motion for Judgment on the Pleadings should be denied as to Plaintiff's fraud claim at this time. Therefore, the Motion for Judgment on the Pleadings as to the claim for punitive damages should likewise be denied.

III. CONCLUSION

IT IS THEREFORE RECOMMENDED that Defendant IBM's Motion for Judgment on the Pleadings [Doc. #13] be granted as to Plaintiff's claim for unfair and deceptive trade practices, but denied as to Plaintiff's remaining claims, without prejudice to Defendant raising its contentions for further consideration on dispositive motions after the close of discovery.

This, the 30th day of August, 2017.

                                              /s/ Joi Elizabeth Peake
                                              United States Magistrate Judge